UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
UNITED STATES OF AMERICA,               )
                                        )
                    v.                  )      Criminal Action No. 11-10062-NMG
                                        )
KELVIN FRYE,                            )
                                        )
_____)


REPORT AND RECOMMENDATION ON
KELVIN FRYE'S MOTION UNDER 28 U.S.C. § 2255
[Docket No. 1183]

December 7, 2018

BOAL, M.J.

        Kelvin Frye, who is currently serving a twenty-five year sentence in a federal correctional

facility, filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence

("Motion").  Docket No. 1183.  For the following reasons, this Court recommends that the

District Judge assigned to this case deny the Motion.

I.      BACKGROUND

        A.      The Conspiracy

        A grand jury indicted Frye and fifteen others with conspiring to distribute, and to possess

with intent to distribute, cocaine and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and

841(b)(1)(B).  Docket No. 76.  The conspiracy, of which Frye and co-defendant Russell Rose

were purportedly leaders, was alleged to have lasted from approximately March 2008 until

November 2010.  Id. at 2; see United States v. Rose, 802 F.3d 114, 116 (1st Cir. 2015).

Following a jury trial, Frye and Rose were convicted on the drug-conspiracy charge.  Docket No. 626.

      B.    <u>Sentencing</u>

Frye was sentenced on May 10, 2013.  Docket No. 781.  At sentencing, Judge Gorton determined by a preponderance of the evidence that Frye was responsible for 14 kilograms of cocaine and 923.05 grams of heroin, which subjected him to a 20-year mandatory minimum.[1] Docket No. 936 at 36, 50.  Judge Gorton noted that this was a "very conservative estimate" and that it was more likely that "several to many times those number of kilograms" were actually involved.  <u>Id.</u> at 50.

That amount of drugs resulted in a base offense level of 34.  <u>Id.</u> at 37.  Judge Gorton then added a two-level enhancement for Frye's possession of a dangerous weapon, another two-level enhancement because an object of the offense was the distribution of a controlled substance in a prison, and a four-level enhancement for Frye's role in the offense.  <u>Id.</u>  Judge Gorton therefore determined the total adjusted offense level was 42.  <u>Id.</u>

With respect to criminal history, Judge Gorton determined that Frye fell under Criminal History Category V but for the fact that he was a career offender, which moved him to Criminal History Category VI.  <u>Id.</u> at 38.  Frye's guideline range was therefore 360 months to life.[2]  <u>Id.</u> However, Judge Gorton decided not to sentence Frye as a career offender because the guidelines range would be excessive.  <u>Id.</u> at 3.

_____

[1] The District Court noted in passing that this mandatory minimum sentence applied.  Docket No. 936 at 4.

[2] The guidelines range remained 360 months to life without the career offender enhancement. <u>See</u> <u>Rose</u>, 802 F.3d at 128, n. 8.

Judge Gorton sentenced Frye to 300 months of imprisonment, to be followed by a supervised release term of 10 years.  Id. at 51-52.  He observed that, like Rose, Frye "organized and led one of the worst and most comprehensive drug conspiracies that this Court has seen in 20 years on the bench."  Id. at 50.  Judge Gorton commented on the impact Frye's crimes had on the community and the need to deter such conduct stating that it would be impossible to know how many lives were ruined as a consequence of Frye's actions.  Id.  He also stated that Frye deserved to be imprisoned "for an unrelenting period of time, not only to punish [him] for the pain [he] inflicted on others but also to deter any other drug lord who thinks he might get away with similar operations which plague rich and poor communities alike."  Id.  In addition, he agreed with the government that Frye was "deserving of an unusually long sentence to account not only for the vastness of the drug enterprise that [he] enabled but also because of the facts that drugs were involved and [his] particularly long and egregious criminal record."  Id. at 51.  Although he chose not to sentence him as a career offender, Judge Gorton observed that Frye "deserve[d] it" and the career offender provisions "produce[d] only a marginally unwarranted sentence."  Id.  It thus deemed the 300-month sentence "sufficient but not greater than necessary to accomplish those things [the Court] just mentioned."  Id.

C.     Appeals

Frye appealed his conviction.  Docket No. 952.  Among other things, Frye argued that the District Judge, rather than the jury, made certain drug-quantity findings, and that the District Judge then imposed a statutory mandated sentence based on those findings, in violation of Allyene v. United States, 570 U.S. 99 (2013).  See Rose, 802 F.3d at 126.  Frye also argued that Judge Gorton impermissibly utilized a prior offense (conspiring to provide contraband to a

3

federal inmate, 18 U.S.C. § 371) to classify him as a career offender.  See id. at 128, n. 8.  The

First Circuit affirmed Frye's conviction, Rose, 802 F.3d at 128, and denied his petition for

rehearing en banc on January 20, 2016.  The Supreme Court denied Frye's petition for a writ of

certiorari on June 6, 2016.  Docket No. 1144.

       D.     The Instant Motion

On February 24, 2017, Frye filed the Motion.  Docket No. 1183.  The government filed

its opposition on May 25, 2017.  Docket No. 1205.  Frye filed a reply on June 12, 2017.  Docket

No. 1214.

II.     DISCUSSION

For the reasons discussed below, petitioner has failed to meet his burden of proof with

respect to his claims for relief.

       A.     Standard Of Review

Title 28, United States Code, Section 2255 provides for post-conviction relief only when

the petitioner has demonstrated that his sentence "(1) was imposed in violation of the

Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory

maximum, or (4) was otherwise subject to collateral attack."  Moreno-Morales v. United States,

334 F.3d 140, 148 (1st Cir. 2003) (citing David v. United States, 134 F.3d 470 (1st Cir. 1998)).

A sentence is subject to collateral attack if it involves an error or defect which, if uncorrected,

would result in the complete miscarriage of justice or irregularities that are inconsistent with the

rudimentary demands of fair procedure.  Id.

The burden is on the petitioner to establish the need for Section 2255 relief.  David, 134

F.3d at 474.  The Supreme Court has emphasized that Section 2255 is not a substitute for direct

appeal.  Hill v. United States, 368 U.S. 424, 426-7 (1962).  "Errors warranting a reversal on direct appeal will not necessarily support a collateral attack."  Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).

A prisoner who invokes Section 2255 is not entitled to an evidentiary hearing as a matter of right.  David, 134 F.3d at 477 (citing United States v. McGill, 11 F.3d 223 (1st Cir. 1993)).  Even if a hearing is requested, a court may forgo such a hearing when the movant's allegations, even if true, do not entitle him to relief, or when the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.  DeCologero v. United States, 802 F.3d 155, 167 (1st Cir. 2015).  As established below, Frye's claims are such that a hearing on his petition is not necessary.

B.      Procedural Default

Frye claims that the District Judge improperly "substitute[d]" 21 U.S.C. § 841(b)(1)(A) (which carries a 10-year mandatory minimum) for § 841(b)(1)(B) (which carries a five-year mandatory minimum), and sentenced him to the higher mandatory term based on facts found by the District Judge at sentencing as opposed to the jury at trial.  Docket No. 1183-1 at 15.  He further argues that this substitution constituted a "constructive amendment" of the indictment, in violation of his Fifth and Sixth Amendment rights.  Id. at 14-15.  In addition, he argues that his prior conspiracy conviction was not a felony drug offense within the meaning of the career offender guidelines.  Id. at 22-34.

"Collateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by 'fail[ing] to raise [the] claim in a timely manner at trial or on [direct] appeal."  Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) (citations omitted).

Frye presents the constructive amendment claim for the first time in his Section 2255 Motion. While he argued both at the District Court level and before the First Circuit that his prior conviction for conspiring to smuggle contraband was not a felony drug offense that would classify him as a career offender, he did so on a different theory than the one presented in his Motion.[3]  Therefore, he has procedurally defaulted these claims.

Accordingly, to obtain relief under Section 2255, Frye must "show both (1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." Id. at 27 (citing United States v. Frady, 456 U.S. 152, 167-168 (1982)).  "[I]neffective assistance of counsel can constitute cause sufficient to excuse a procedural default, but only if the representation was 'constitutionally ineffective under the standard established in Strickland." Id. at 29 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Frye argues that his counsel was ineffective and, therefore, the procedural default should be excused.  Docket No. 1183-1 at 35-37.

In order to show ineffective assistance of counsel under the Strickland analysis, Frye must show that: (1) counsel's performance was deficient, i.e., counsel made errors so serious that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense, i.e., counsel's errors were so serious as to deprive the defendant of a fair trial.  Strickland v. Washington, 466 U.S. 668, 687 (1984).

To satisfy the first prong of the Strickland test, Frye must show that trial counsel's performance was deficient to the point of being "objectively unreasonable."  See United States v.

---

[3] In his motion, Frye acknowledges that he did not raise the issue presented by his motion in any appeal or post-conviction motion prior to the instant one.  Docket No. 1183 at 4.

McGill, 11 F.3d 223, 226 (1st Cir. 1993); Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir.

2012).  Reasonable conduct falls "within the range of competence demanded of attorneys in

criminal cases."  United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978) (quoting McMann

v. Richardson, 397 U.S. 759, 770-71 (1970)).  In other words, performance is constitutionally

deficient "only if no competent attorney would have acted as [counsel] did."  Companonio, 672

F.3d at 110.

　　　　To establish prejudice, a defendant must demonstrate "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694.  "[T]he question is not whether a court can be certain counsel's

performance had no effect on the outcome or whether it is possible a reasonable doubt might

have been established if counsel acted differently."  Harrington v. Richter, 562 U.S. 86, 111

(2011).  Rather, "the likelihood of different result must be substantial, not just conceivable."  Id.

at 792.

　　　　Although Frye must prove both deficient performance and prejudice to prevail on his

ineffective assistance of counsel claim, the Court "need not address both requirements if the

evidence as to either is lacking."  Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007).  "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which

we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697.

　　　　If Frye "can meet the prejudice standard needed to establish ineffective assistance under

Strickland, then the prejudice standard under the 'cause and prejudice' showing to excuse a

procedural default is also met."  Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006) (citing Prou v.

7

United States, 199 F.3d 37, 49 (1st Cir. 1999)).

    C.    Constructive Amendment

    Frye was charged and convicted under 21 U.S.C. § 841(b)(1)(B), which carries a mandatory minimum sentence of five years.  He argues that the Court sentenced him under 21 U.S.C. § 841(b)(1)(A), which carries a mandatory minimum sentence of 10 years, based on facts found by the Court at sentencing rather than by the jury at trial.  Frye argues that this was a constructive amendment of the indictment and that his counsel were constitutionally ineffective because they failed to object both at sentencing and on appeal.  Docket No. 1183-1 at 13-21.  This Court disagrees.

    "[A] constructive amendment occurs when the charging terms of an indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them."  United States v. McIvery, 806 F.3d 645, 652 (1st Cir. 2015) (citations omitted).  Constructive amendments are forbidden by the Fifth Amendment, which guarantees defendants the right to be tried only on charges indicted by a grand jury.  United States v. Bucci, 525 F.3d 116, 131 (1st Cir. 2008) (citing United States v. Fornia-Castillo, 408 F.3d 52, 66 (1st Cir. 2005)).

    The First Circuit has already found that, although Judge Gorton made a passing reference to the mandatory minimum, he did not sentence Frye under the mandatory minimum but rather based the sentence on the guidelines:

> . . . the court exclusively based its sentence on the guidelines, and thus seemed to avoid sentencing the defendants under the aggravated statutory provisions.  Indeed, when discussing the drug-quantity findings, the court framed the question as one that solely affected the guidelines inquiry.  The court stated that it would 'use that [its findings] as [to] the number of kilos to establish the base offense level.' Utilizing that base offense level, and the factors referenced in 18 U.S.C. § 3553(a), the court then imposed sentences based purely on guidelines considerations.

Rose, 802 F.3d at 127.  Indeed, the First Circuit "was inclined to say that Allyene was not implicated here" – that is, the mandatory minimum provision was irrelevant to the sentence imposed.[4]  Id.  Because the District Judge did not rely on the aggravated statutory provisions, the sentence did not constructively amend the indictment.  And because there was no constructive amendment of the indictment, there is also no claim that Frye's counsel was ineffective by failing to make such a claim.

Even if Frye had a colorable constructive amendment claim, he has also failed to show that his counsel was ineffective for failing to raise it.  Frye faults his trial counsel for failing to anticipate the result in Allyene and thereby failing to preserve his constructive amendment claim.  Docket No. 1183-1 at 17-19.

Frye was sentenced on May 10, 2013, before Allyene was decided.[5]  At the time Frye was sentenced, Supreme Court precedent established that facts triggering a mandatory minimum sentence were not elements of the crime and could be proven by a preponderance of the evidence at sentencing.  See Harris v. United States, 536 U.S. 545, 568 (2002).  Counsel does not act deficiently by failing to anticipate future legal developments.  See, e.g., Paz-Alvarez v. United

---

[4] In Allyene, the Supreme Court held that:

> Any fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime.  It follows then, that any fact that increases the mandatory minimum sentence is an 'element' that must be submitted by the jury.

Allyene v. United States, 570 U.S. 99, 103 (2013).

[5] Allyene was decided on June 17, 2013.

States, No. 16-1792, 2017 WL 1957002, at *4 (D.P.R. Apr. 25, 2017). Thus, Frye's trial counsel's performance was not deficient for failing to raise the constructive amendment claim he now attempts to raise.

Frye also faults his appellate counsel for not pressing the constructive amendment claim on appeal. To be effective, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000) (citation omitted). Only when an ignored issue is clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. Thompson v. Spencer, 111 Fed. Appx. 11, 13 (1st Cir. 2004) (unpublished decision) (citation omitted). Here, Frye's appellate counsel argued several nonfrivolous claims of error, which the First Circuit addressed in a published decision.

Moreover, Frye at least had a colorable claim that he preserved the Alleyne claim, whereas there was no reference at all to a constructive amendment by trial counsel, which would have meant that the constructive amendment claim would have been subject to plain error review. See United States v. Brandao, 539 F.3d 44, 60 (1st Cir. 2008) (holding that plain error review applies to unpreserved constructive amendment claims). The decision to pursue the stronger Allyene claim was therefore reasonable under the circumstances. Accordingly, Frye has failed to show ineffective assistance of counsel.

Frye has also failed to show prejudice. As the First Circuit noted, the government provided ample evidence at trial that Frye was "individually responsible for conspiring to distribute more than five kilograms of controlled substances." Rose, 802 F.3d at 128.

In addition, the "primary objective of the rule against constructive amendment of

indictments is to ensure defendants have notice of the charges they must defend against."
McIvery, 806 F.3d at 652.  Frye never identifies with particularity what notice he lacked.  He
was charged with conspiring to distribute "100 grams or more" of heroin and "500 grams or
more" of cocaine, which is what the evidence at trial established and the offense for which he
was convicted.  Moreover, as Frye concedes, see Docket No. 1183-1 at 19, at the time of his
sentencing, it was well-established that mandatory minimum provisions did not constitute
elements of a crime and it was constitutionally permissible to enhance a mandatory minimum
based on 'sentencing factors' found by a judge on a lessened standard of proof.  See Harris, 536
U.S. at 556 (2002).  Thus, there was no "mismatch between the indictment's description of the
charged offense and some other variable."  McIvery, 806 F.3d at 652.

Accordingly, this Court finds that Frye has failed to show entitlement to relief on his first
claim.

D.     Prior Conspiracy Conviction

At sentencing, defense counsel argued that Frye's prior conviction for conspiring to
smuggle contraband to a federal inmate in violation of 18 U.S.C. § 371 was not a "felony drug
offense" within the meaning of either the career offender guidelines or 18 U.S.C. §§ 841 & 851.
Docket No. 936 at 38-40.  The District Judge rejected Frye's arguments.  Id. at 40.  On appeal,
Frye argued that the District Judge erred in using this offense to move him into the grasp of the
guidelines' career offender provision because he failed to engage in the appropriate analysis to
determine whether the prior offense was actually a drug crime.  Rose, 802 F.3d at 128, n. 8.  The
First Circuit rejected that argument as well.  Id.

Now, Frye again argues that his prior conviction for smuggling marijuana into a federal

prison does not qualify him as a career offender or is a § 851 predicate.  Docket No. 1183-1 at 22-34.  Frye raises a new theory: that his prior conviction for conspiracy to smuggle contraband to a federal inmate did not qualify as prior felony drug offense because the statutes of conviction (18 U.S.C. §§ 371, 1791(a)(1)) are "indivisible," and, therefore, the "modified categorical" approach that he claims the District Judge took in determining whether it qualified was not appropriate under Descamps v. United States, 133 S.Ct. 2276 (2013).  Docket No. 1182-1 at 24-28.  Frye then claims that his counsel was ineffective for failing to raise this theory at sentencing.[6]  Id. at 22-24, 31-32.

Frye has failed to show prejudice from any such error.  As the First Circuit noted in its decision, the mandatory minimum provisions of 21 U.S.C. § 841 had no bearing on the sentence Judge Gorton imposed.  See Rose, 802 F.3d at 127.  Similarly, the career offender classification had no impact on Frye's sentence.  Frye's sentencing range was 360 months to life, regardless of whether he qualified as a career offender.  Id. at 128, n. 8.  Moreover, Judge Gorton expressly stated that the sentence was not based on the career offender enhancement: "I am not going to sentence you as a career offender, even though you deserve it."  Docket No. 936 at 51; see also id. at 3, 28-29.  Accordingly, Frye has not shown prejudice and, therefore, has not demonstrated that he is entitled to relief under Section 2255.

E.    Miscarriage Of Justice

Finally, Frye correctly states that the merits of a procedurally defaulted claim may be reached if failure to address the claim would result in a "fundamental miscarriage of justice."[7]

---

[6] Descamps was decided on June 20, 2013, after Frye was sentenced.

[7] See Docket No. 1183-1 at 37.

See United States v. Duval, 957 F. Supp. 2d 100, 113 (D. Mass. 2013) (citing Murray v. Carrier, 477 U.S. 478, 495 (1986)).  Frye also correctly points out that actual innocence of the offense may be shown to satisfy the fundamental miscarriage of justice standard.[8]  See id. (citing Schlup v. Delo, 513 U.S. 298, 322 (1995)).  However, he has failed to point to any evidence of actual innocence or that he otherwise satisfies the fundamental miscarriage of justice standard.

III.  RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case deny Frye's Motion.

IV.  REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

---

[8] See Docket No. 1183-1 at 37-39.

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge